# United States District Court
# District of Massachusetts

MARY BUCKSAR,
    Plaintiff,

V.                              CIVIL ACTION NO. 11-10134-RBC[1]

CHARLES A. MAYO III, d/b/a
    THE CAPE CODDER GUEST
    HOUSE,
    Defendant.

## *MEMORANDUM AND ORDER ON DEFENDANT'S BILL OF COSTS (#97)*

COLLINGS, U.S.M.J.

On June 26, 2012, judgment entered on the jury verdict in favor of defendant Charles A. Mayo, III, d/b/a The Cape Codder Guest House ("Mayo"). (#94) As a prevailing party, costs were awarded to Mayo in that judgment. On July 6, 2012, Mayo filed a Bill of Costs (#97) together with supporting documentation (#97-1) and an affidavit of counsel (#97-2). Plaintiff Mary Bucksar ("Bucksar") filed an opposition to the bill of costs (#98) on July 17,

---

[1] On April 27, 2011, with the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

2012.

The First Circuit has repeatedly stated that "[a]llowable costs are specifically set out in 28 U.S.C. § 1920." *Papas v. Hanlon*, 849 F.2d 702, 704 (1 Cir., 1988)(*per curiam*) citing *Bank of Honolulu v. Rivera Davila*, 438 F.2d 1367, 1371 (1 Cir., 1971); *accord Walters v. President and Fellows of Harvard College*, 692 F. Supp. 1440, 1441-42 (D. Mass., 1988). Indeed, as explained by the appellate court,

> section 1920 has an esemplastic effect. It fills the void resulting from Rule 54(d)'s failure to define the terms 'costs,'...and in that way constrains the district court's power to determine which expense categories constitute taxable costs. In other words, the statute and rule, read together, signify that a district court lacks the ability to assess 'costs' under Rule 54(d) above and beyond those that come within the statutory litany.

*In Re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 994 F.2d 956, 962 (1 Cir., 1993)(citations omitted); *United States v. Bevilacqua*, 447 F.3d 124, 128 (1 Cir., 2006).

Thus it is within the confines of 28 U.S.C. § 1920 that the allowable costs for which Mayo seeks recompense must be determined.[2]

---

[2] The First Circuit has made clear that "[d]istrict court orders awarding costs normally are reviewed only for abuse of discretion." *In re San Juan Dupont Plaza Hotel Fire Litigation,* 111 F.3d 220, 228 (1 Cir., 1997)(citations omitted); *Davila-Feliciano v. Puerto Rico State Ins. Fund,* 683 F.3d 405, 406 (1 Cir., 2012).

Pursuant to subsection (1) of § 1920, Mayo seeks three hundred twenty-eight dollars ($328.00) for the service of four (4) subpoenas. The plaintiff objects to the fees on the grounds that the requested costs relate to the "service of deposition subpoenas upon the same two witnesses on two separate occasions." (#98 at 2) Bucksar's point is well taken. Absent some explanation from the defendant why these costs were duplicated, only the costs for the service of one set of subpoenas in the amount of one hundred sixty-two dollars ($162.00) shall be taxed as costs.

Pursuant to subsection (2) of § 1920, the defendant seeks to be reimbursed for the fees of the court reporter incurred in producing the deposition transcripts of five individuals, Cheryll Hogan ("Hogan"), Dyhanna Noble ("Noble"), Mary Bucksar, Charles A. Mayo, III, and Deborah Spang-Dionne ("Spang-Dionne"). No objection is interposed vis-a-vis the costs related to the Hogan, Noble and Bucksar transcripts, and they shall be awarded in full.

The costs of Mayo's deposition transcripts shall not be taxed. As the defendant in this case, his testimony was readily available to counsel without the need of deposition transcripts. The plaintiff objects to paying for a copy of a transcript, a condensed transcript and an e-transcript for the deposition of Spang-Dionne, arguing that "additional copies of [the] transcript[] were

unnecessary." (#98 at 2) The Court agrees and so shall tax only the costs of a single copy of the transcript, together with the processing fee and courier charge. A total of one thousand four hundred fifty-five dollars and fifty cents ($1,455.50) shall be taxed as fees for transcripts.

Under § 1920(3), Mayo seeks to recover four hundred thirty-eight dollars and twelve cents ($438.12) representing the costs for fees for witnesses. The plaintiff objects only to the amount claimed for subsistence for Spang-Dionne, that being two hundred sixty-five dollars and fifty cents ($265.50).[3] Pertinent statutory provisions state, in precatory language, that attendance fees and subsistence allowances *shall* be paid to a witness. *See* 28 U.S.C. §1821(b) and (d)(1). In particular, "[a] subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." 28 U.S.C. § 1821(d)(1).

Bucksar argues that Spang-Dionne is not entitled to a subsistence payment because she only "testified as a witness for about one (1) hour on one (1) day of trial." (#98 at 3) The plaintiff's argument is not persuasive. The trip from

---

[3] The defendant has included a taxi receipt in his documentation to which Bucksar correctly objects, but Mayo does not seek reimbursement for a cab ride in his bill of costs.

Provincetown to Boston is over one hundred miles.  To require a witness to make such a commute in the notorious morning rush hour traffic from the South Shore to be in court in Boston for 9:00 A.M. is an unreasonable burden.  *See*, e.g., *Duvigneaud v. Garcia*, 2007 WL 2009800, *2 (S.D. Cal., July 5, 2007).  The defendant is entitled to recover the subsistence fees for one day for Spang-Dionne, including a hotel stay the night before her testimony.  The amount sought to be recouped is less than the per diem rate set for Boston by the federal government,[4] and so it shall be taxed in full.  A total of four hundred thirty-eight dollars and twelve cents ($438.12) shall be taxed as the costs for fees for witnesses.

Lastly the defendant requests reimbursement for "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. §1920(4).  With respect to this category, a total of two hundred sixty-three dollars and fifty-four cents ($263.54) is sought.  Mayo has submitted receipts from FedEx Office reflecting the copying

---

[4] The relevant statute provides that the subsistence cost for a witness cannot exceed the allowable maximum per diem rate for official travel by federal government employees in the area of attendance. *See* 28 U.S.C. § 1821(d)(2) and (d)(3). In June 2012, the government per diem rate in Boston was seventy-one dollars ($71.00) for meals and two hundred one dollars ($201.00) for lodging. *See* FY 2012 Per Diem Rates for Massachusetts, http://www.gsa.gov/portal/category/100120.

charges incurred[5] (#97-1), and defense counsel states in his affidavit that "[a]ll copying costs are no higher than what is generally charged in the local Boston area and no more copies than were actually necessary were reproduced." (#97-2 ¶ 2)  Bucksar objects to the costs requested, arguing that the defendant has failed to identify the documents copied, or explain why they were copied.  The plaintiff's argument has merit, and, in light of the defendant's failure to provide any explanations, the Court shall reduce the amount sought to be taxed for paper copies by twenty-five percent, or forty-nine dollars and sixty-two cents ($49.62). *See Osorio v. One World Technologies, Inc.,* 834 F. Supp.2d 20, 23 (D. Mass., 2011); *Martinez v. Cui,* 2009 WL 3298080, *3 (D. Mass., Apr. 13, 2009).

Bucksar asserts that she is indigent and "lacks the financial means to pay any amount of the costs asserted against her by the defendant." (#98 at 4)  In making that argument, however,

> 'The burden is on the losing party to provide the district court with sufficient documentation to support such a finding [that the losing party is incapable of paying the court-imposed costs at this time or in the future].  This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a

---

[5] The receipts indicate that one hundred ninety-eight dollars and forty-six cents ($198.46) was spent on paper copies and sixty-five dollars and eight cents ($65.08) was spend on a poster. (#97-1)

> schedule of expenses.' *Rivera v. City of Chicago*, 469 F.3d 631, 636 (7th Cir.2006). The *Rivera* court also emphasized that the indigence exception "is a narrow one. Rule 54(d)(1) provides a presumption that costs are awarded to the prevailing party, and the burden is on the non-prevailing party to overcome this presumption." 469 F.3d at 636. *See also In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 464 (3d Cir. 2000) (holding that "if a losing party is indigent or unable to pay the full measure of costs, a district court *may, but need not automatically*, exempt the losing party from paying costs") (emphasis added).

*Martinez*, 2009 WL 3298080, *4.

The plaintiff here has provided no documentation to support her claim of indigence, and so her argument must fail.

In sum, for the reasons stated, a total of two thousand two hundred sixty-nine dollars and fifty-four cents ($2,269.54) shall be, and hereby is, TAXED to the plaintiff as costs.

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
March 28, 2013.   United States Magistrate Judge